OPINION
{¶ 1} Defendant-appellant Cecil D. Yost, Jr. appeals the March 6, 2002 Judgment Entry of Sentence of the Fairfield County Court of Common Pleas which found him guilty of one count of vandalism and sentenced him accordingly. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On July 4, 2001, Dennis Eveland was the chief of security at Mannequins Café in Lancaster, Ohio. That night, shortly after midnight, Mr. Eveland asked an intoxicated patron to leave the bar. Approximately one-half hour later, the same individual returned and asked to be allowed back into the bar. Mr. Eveland refused to permit the reentry. Mr. Eveland thought the man was too intoxicated to be in the bar. The man then became belligerent.
 {¶ 3} At the entrance to the bar, there are two sets of doors. Mr. Eveland propped the outer-most doors open with two metal stools. After Mr. Eveland would check a patron's ID, the patron could enter through the second set of doors. In between the first and second set of doors, there was a small room with a sidelight window.
 {¶ 4} The man who was denied entrance grabbed one of the metal stools and threw it through the outer doors, striking the sidelight window. As a result, the sidelight window cracked. The man then grabbed the other stool and began banging the stool against the outer-most door. By the time Mr. Eveland reached the man, the man threw the stool at a large window on the east side of the building. The stool went through the window, shattering the glass. The man immediately ran down the street.
 {¶ 5} Mr. Eveland ran after the man, never letting the him out of his sight. When Mr. Eveland caught the man, he held him down on the ground until a police officer arrived. Mr. Eveland was unable to identify the person when testifying at trial, but stated the man he caught and detained was the man who broke two windows at the café. Mr. Eveland testified he was positive the person he tackled and held down was the person who broke the windows. Appellant was the individual on the ground subsequently arrested by the Lancaster Police.
 {¶ 6} Officer Matthew Ream of the Lancaster Police Department, was traveling southbound on Columbus Street in a marked cruiser, directly across from Mannequin's Café just before the incident. As Officer Ream pulled up to the intersection, he observed appellant swinging the bar stool in a sideway manner and into a side window directly beside the front entrance to the café. Officer Ream then saw appellant walk around to the east side of the building and twice swing a bar stool into a large tinted window. Officer Ream saw the window shatter.
 {¶ 7} Officer Ream yelled for appellant to stop, but after appellant looked in Officer Ream's direction, he began to run down the street. Officer Ream then noticed Mr. Eveland and several other individuals from the bar chasing after appellant. Officer Ream caught up to Mr. Eveland who was holding appellant on the ground approximately 50 to 75 feet from where the window had been broken. Officer Ream placed appellant under arrest, noting appellant was extremely intoxicated. Officer Ream testified appellant was the individual he observed breaking the windows.
 {¶ 8} Officer Terry Williams of the Lancaster Police Department, took pictures of the damage to the windows. These photographs were introduced as state's exhibits 1, 2, and 3.
 {¶ 9} Mark Brobeck, the owner of Mannequins Café, testified at trial two windows were broken during the incident. One was the sidelight window approximately 12 inches wide, and the other was a large outer window. According to Mr. Brobeck, the amount of the repair of the large window was $401.17. Mr. Brobeck also testified the cost to replace the window tint and lettering on both windows was an additional $290.81. The costs to replace the sidelight window was $158.00.
 {¶ 10} Kim Montgomery, a bartender and the manager of Mannequins Café, was working at the time of the incident. While Ms. Montgomery remembered the incident, she could not identify the person who caused the damage. Ms. Montgomery testified she was present when the windows were replaced and knew that the tinting and lettering was also replaced on both windows. Mr. Montgomery personally handed the check to the person who performed the repairs. Ms. Montgomery was also present when the sidelight window was replaced on a separate day. In response to a question from a juror, Ms. Montgomery stated the lettering which was replaced on the window was the same as it was before the window was broken.
 {¶ 11} Appellant testified on his own behalf. He acknowledged he grabbed a bar stool and moved to swing it. He claimed he had no recollection of hitting the sidelight window. Appellant explained he did not mean to break the large window, but when he swung the stool, it hit the ground. He testified it was the recoil which actually propelled the stool in the large window.
 {¶ 12} On August 10, 2001, the Fairfield County Grand Jury indicted appellant with one count of vandalism, in violation of R.C.2909.05(B)(1)(a), a felony of the fifth degree. The matter proceeded to a jury trial on February 26, 2002. After hearing all the evidence, the jury found appellant guilty as indicted. In a March 6, 2002 Judgment Entry, the trial court sentenced appellant to ten months in prison and ordered appellant to pay a fine and restitution. It is from this judgment entry appellant prosecutes his appeal, assigning the following error for our review:
 {¶ 13} "I. THE TRIAL COURT ERRED WHEN IT ADMITTED EXHIBIT AS PROOF OF LOSS WHERE EXHIBIT WAS NOT ORIGINAL BILL, THERE WAS A GENUINE ISSUE AS TO AUTHENTICITY AND NO PROOF OF ACTUAL EXPENSE WAS PRESENTED."
 I. {¶ 14} In appellant's sole assignment of error, he maintains the trial court erred in admitting an exhibit as proof of loss where the exhibit was not an original bill, there was a genuine issue as to authenticity, and no proof of actual expense. Appellant essentially argues the only way the jury could determine appellant had caused $500 worth of damage was to apportion State's Exhibit 5, entitled an Estimate of Repairs, between the two broken windows. Appellant contends this estimate of repairs was insufficient proof of damage.
 {¶ 15} As noted above, appellant was charged with one count of vandalism. In order to prove vandalism, the State had to prove the amount of property damage was $500 or more. Essentially, appellant contends the evidence presented could not establish this fact. We disagree.
 {¶ 16} Mark Brobeck testified about the amount of damages sustained as a result of the incident. Mr. Brobeck first testified as to state's exhibits 4 and 6. Mr. Brobeck identified states's exhibit 4 as the invoice to replace the large window. This invoice demonstrated the cost of the repair was $401.17. Mr. Brobeck also identified state's exhibit 5, which was a copy of the document entitled "Estimate of Repairs" from Pentrack's Graphics. Mr. Brobeck testified the invoice was to replace the window tint and the lettering on both windows. This estimate of repairs indicated the total cost to replace the window tint on both exterior windows and to replace the lettering on the large window was $290.81. Finally, Mr. Brobeck testified replacement cost of the sidelight window was $158.00. Mr. Brobeck presented state's exhibit 6, the invoice for this repair.
 {¶ 17} Appellant claims the trial court erred in introducing the Pentrack's Graphics estimate of repairs as proof of damage. Appellant claims it was not an actual bill for a service rendered, but rather an estimate of a potential cost. Further, the estimate was not an original, in violation of Evid.R. 1002. Appellant contends because the jury would have to use this exhibit in order to arrive at the conclusion the damage to the large window was in excess of $500, if this exhibit was admitted in error, the State would be unable to prove the damage to the windows.
 {¶ 18} During their deliberations, the jury asked one written question. The question was "Please clarify #6. #6 Do we have to agree that he broke 2 windows or only if 1 window exceeded the $500 limit? ($561 value of large window)." The trial court assumed #6 referred to element #6 of the jury instructions, which referenced vandalism. In response to the question, the trial court responded: "The jury does not have to agree that the defendant broke two windows as is stated in the 6th element of Vandalism. In the instructions, but if the jury finds that the defendant broke only one window, then the jury must find beyond a reasonable doubt that the value of the property or the physical harm to the property is $500.00 or more to find the defendant guilty of Vandalism as long as the jury finds the other elements of Vandalism have been proven beyond a reasonable doubt."
 {¶ 19} Appellant argues the jury obviously speculated as to what portion of the estimated cost for tinting and lettering contained in the Pentrack's Graphics' estimate should apply to each of the windows allegedly broken by appellant. We disagree.
 {¶ 20} The fact the jury asked this question does not affirmatively demonstrate the jury ultimately concluded appellant broke only one window. In fact, there is nothing in the record to demonstrate the jury did not conclude appellant was responsible for both windows. Because the evidence noted supra supports the conclusion appellant broke both windows, we find appellant's sole assignment of error meritless.
 {¶ 21} Appellant's sole assignment of error is overruled.
 {¶ 22} The March 6, 2002 Judgment Entry of the Fairfield County Court of Common Pleas is affirmed.
By: Hoffman, P.J., Wise, J. and Boggins, J. concur.
topic: vandalism.